KNOLL, J.,
dissenting.
|! Unlike the federal constitution, our state constitution establishes “an affirmative right to privacy impacting non-criminal areas of law....” Hondroulis v. Schuhmacher, 553 So.2d 398, 415 (La.1988) (emphasis added). As we have acknowledged, Article I, Section 5 of the Louisiana Constitution “is one of the most conspicuous instances in which our citizens have chosen a higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution.” State v. Hernandez, 410 So.2d 1381, 1385 (La.1982). Because the majority gives short shrift to a right the people have chosen to elevate and one we have recognized as fundamental, I respectfully dissent and would find the definition of “family” laid out in the City of Baton Rouge, East Baton Rouge Parish Uniform Development Code Appendix H violates Article I, Section 5 of the Louisiana Constitution.
Under Article I, Section 5, “[ejvery person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable 12searches, seizures, or invasions of privacy.” La. Const. art. I, § 5 (1974). This right to privacy “protects varied interests from invasion. Among the interests protected is the individual’s right to be free from unreasonable intrusion into his seclusion or solitude, or into his private affairs. This includes the right to be free of unwarranted intrusion into his own quarters.” Parish Nat. Bank v. Lane, 397 So.2d 1282, 1286 (La.1981) (“Parish ”). Of course, this right to privacy is not absolute and “is limited by the state’s reasonable exercise of the police power.” Id. As we acknowledged in dicta in Parish, “Zoning ordinances ... may restrict the use of private property.” Id. (emphasis added). In order for such a restriction on the fundamental right of privacy to comport with the robust privacy protections guaranteed by our state’s constitution, we have repeatedly recognized such restrictions are subject to the highest level of judicial review — strict scrutiny: “[Wjhere a decision as fundamental as those included within the right of personal privacy is involved, regulations imposing a burden on it may be justified only by compelling state interests, and must be narrowly drawn to express only those interests.” Hondroulis, 553 So.2d at 415; see State v. Perry, 610 So.2d 746, 760 (La.1992) (“[Wjhere a decision as fundamental as those included within the right of personal privacy is involved, state action imposing a burden on it may be justified only by a compelling state interest, and the state action must be narrowly confined so as to further only that compelling interest.”); Arsenaux v. Arsenaux, 428 So.2d 427, 430 (La.1983) (“This constitutional right to privacy is not absolute but can only yield to a compelling state interest”).
The interest in privacy affected in this case is even stronger in that it implicates *339 another right explicitly guaranteed by this state’s constitution — “the right to acquire, own, control, use, enjoy, protect, and dispose of private property.” La. Const, art. I, § 4. The definition of “family” promulgated in the zoning ordinance before us strikes at the very heart of these protections, as it provides an | .^arbitrary limit on the number of people a homeowner can choose to have reside in his home — a decision concerning the disposition of a homeowner’s property which, all other things being equal, should be his alone. The City of Baton Rouge/Parish of East Baton Rouge (the “government”) asserts this ordinance is meant to create “an area free of too many people and the resulting noise, traffic, and commotion.” Nevertheless, the ordinance’s definition of “family” punishes willy-nilly a homeowner who chooses to populate his home in the manner he sees fit, even if “noise, traffic, and commotion” is not a byproduct of this decision. Certainly, the right to privacy is qualified by the rights of others. Parish, 397 So.2d at 1286. However, for a homeowner who chooses to exercise his property rights in a manner that does not interfere with the rights of his neighbors, this definition of “family” empowers the government to pry into the homeowner’s quarters, intruding into his seclusion and solitude. See Parish, 397 So.2d at 1286. This definition of “family” invites the government to look into the dwelling place of a homeowner in order to sanction not his impingement on the rights of his neighbors, but his personal decision concerning whom he takes into his home. In short, it punishes status, not conduct and, in doing so, affects a homeowner’s capacity to make very personal decisions, including the decision to become a foster parent. To this extent, it is also against public policy. There is no question this intrusion implicates the right to privacy guaranteed in Article I, Section 5.
Such an intrusion on the right to privacy can only be justified by a compelling state interest and must be narrowly tailored to further only that compelling interest. Hondroulis, 553 So.2d at 415; Perry, 610 So.2d at 760. As mentioned above, the government argues the purpose of this restriction is to create “an area free of too many people and the resulting noise, traffic, and commotion.” Although it is difficult to imagine circumstances under which this purpose could be deemed compelling, the government’s use of this definition of “family” to achieve |4this purpose is certainly not narrowly tailored to achieve that purpose. Indeed, the government has at their disposal numerous other less restrictive methods to prevent “noise, traffic, and commotion.” For example, to deal with the problem of “noise and commotion,” the government could enforce Sections 12:100 through 12:104 of Title 12 of the Code of Ordinances of the City of Baton Rouge, East Baton Rouge Parish, which prohibits, details, and provides sanctions for “makfing] or causing] to be made any loud and raucous noise in the parish which is offensive to persons of ordinary sensibilities and which renders the enjoyment of life or property uncomfortable or interferes with public peace and comfort.” Likewise, to curb any perceived parking issues, the government could pass ordinances under its general police power limiting the number of cars which can be maintained at each residence. Because such measures less burdensome to the fundamental right to privacy guaranteed by our constitution are available to the government, the restriction to the right to privacy imposed by this ordinance’s definition of “family” cannot survive strict scrutiny.
Louisiana recognizes an affirmative right to privacy which is more robust than the right to privacy implied in the federal constitution. Thus, I am unpersuaded by *340 the majority’s decision, in upholding the definition of “family” found in this ordinance, to follow the United State Supreme Court’s interpretation of the federal constitution in Village of Belle Tern v. Boraas, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). In doing so, the majority disregards a right affirmatively guaranteed in the Louisiana state constitution, confusing it with the weaker privacy protections read into the federal constitution. While the affirmative right to privacy under the state constitution is subject to strict scrutiny, the implied federal right to privacy is not.
For the foregoing reasons, I respectfully dissent from the majority’s opinion and would affirm the District Court’s judgment that the ordinance’s definition of “family” is unconstitutional.